# United States Court of Appeals
## For the First Circuit

No. 17-1280

ELIZABETH WAIRIMU GITAU,

Petitioner,

v.

JEFFERSON B. SESSIONS III,
United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Kayatta, and Barron,
<u>Circuit Judges</u>.

<u>Saher J. Macarius</u> and <u>Law Offices of Saher J. Macarius, LLC</u> on brief for petitioner.
<u>Sunah Lee</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, <u>Chad A. Readler</u>, Acting Assistant Attorney General, Civil Division, and <u>Cindy S. Ferrier</u>, Assistant Director, Office of Immigration Litigation, on brief for respondent.

December 22, 2017

**KAYATTA**, **Circuit Judge**.   Elizabeth Wairimu Gitau petitions for review of a decision from the Board of Immigration Appeals ("BIA") dismissing her appeal of an Immigration Judge's ("IJ") decision ordering her removal to Kenya.  Having reviewed the BIA's decision, including the decision of the IJ as adopted by the BIA, see Guerrero v. Holder, 667 F.3d 74, 76 (1st Cir. 2012), as well as the record and the parties' briefs, we deny Gitau's petition.

## I.

Gitau is a native and citizen of Kenya.  Following a marriage to a United States citizen, Undray Johnson, Gitau became a lawful permanent resident on a conditional basis.  Under 8 U.S.C. §§ 1186a(c)(1)(A) and (B), she and Johnson could remove the conditional nature of her status by jointly filing Form I-751, the Application to Remove the Conditions of Residence.  They divorced, however, and Gitau was unable to satisfy the joint filing requirement.  She filed a petition to waive the joint filing requirement, pursuant to 8 U.S.C. § 1186a(c)(4) and 8 C.F.R. § 1216.5, which permit an alien who cannot satisfy the joint filing requirement to nonetheless avoid removal if certain conditions are met.  That petition was denied.  She was subsequently placed in removal proceedings, whereupon she renewed her request for a waiver.  In her waiver requests, she relied upon three subsections of the regulation addressing such waivers, two of which required

- 2 -

a showing that she entered into the marriage in good faith, 8 C.F.R. §§ 1216.5(a)(1)(ii)-(iii), and the third of which required a showing that her removal would result in extreme hardship, 8 C.F.R. § 1216.5(a)(1)(i).

After a testimonial hearing, the IJ ruled against Gitau, finding her not to be a credible witness and finding the evidence other than her own testimony to be insufficient to support her claim that she entered into her marriage in good faith. The IJ also found that Gitau had not demonstrated extreme hardship. Rejecting Gitau's appeal, the BIA adopted and affirmed the IJ's decision, determining that the IJ did not clearly err in finding Gitau's testimony not credible, and that the IJ adequately considered her documentary evidence. Gitau now asks us to set aside the BIA's decision for lack of substantial evidence supporting its findings.[1]

---

[1] The Statement of Issues in Gitau's brief also lists as an issue before us: "Whether the BIA's decision is arbitrary and capricious and not in accordance with current immigration policy." That formulation of the issue would seem to be less favorable to Gitau than the substantial evidence test argued elsewhere in her brief. Be that as it may, she does not press this formulation in the substantive portions of her brief, thus waiving it. See Puerto Rico Tel. Co. v. San Juan Cable LLC, 874 F.3d 767, 770 (1st Cir. 2017). She also alludes to due process concerns in her Summary of Argument, but similarly fails to develop any argument on this point, thus waiving it as well. Id.

- 3 -

## II.

### A.

To establish that she entered into her marriage in good faith, Gitau must demonstrate that she "intended to establish a life with [her] spouse at the time of marriage." Valdez v. Lynch, 813 F.3d 407, 410 (1st Cir. 2016) (internal quotation marks omitted) (quoting Cho v. Gonzales, 404 F.3d 96, 102 (1st Cir. 2005)). In making this determination, the Secretary of Homeland Security is to "consider any credible evidence relevant to the application." 8 U.S.C. § 1186a(c)(4). Congress assigned to the immigration authorities, not to this Court, the responsibility for determining the credibility of an applicant's testimony. See id. ("The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Secretary of Homeland Security."). As a result of this statutorily compelled deference, we review credibility determinations under the substantial evidence standard, which "requires us to uphold the agency's findings so long as the record does not 'compel a reasonable factfinder to reach a contrary determination.'" Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009) (quoting Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008)). This deference is great, but "not unlimited." Jabri v. Holder, 675 F.3d 20, 24 (1st Cir. 2012).

In reviewing a credibility determination, we recognize that the law governing removal proceedings expressly authorizes the IJ to consider "demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the . . . account, the consistency [of the evidence] . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1229a(c)(4)(C). So, too, the IJ must consider any corroborating evidence offered, id. § 1229a(c)(4)(B), and assess the evidence as a whole. Jabri, 675 F.3d at 24.

It is undisputed that a wedding took place in October 2004. The issue, though, is whether Gitau entered into the marriage in good faith. Examination of Gitau at the hearing trained on determining how Gitau remembered her courtship and wedding, how well she knew Johnson and his friends, and what living arrangements ensued. The IJ found that Gitau's testimony contained numerous statements inconsistent with ones she had made previously, and as such, she had "failed to testify credibly regarding her marriage." In so finding, the IJ pointed to four ways in which Gitau's testimony conflicted with other evidence, most significantly her own prior statements made to the United States Customs and Immigration Service ("USCIS") and statements contained within various sworn declarations. These

inconsistencies involved: the length of Gitau and Johnson's courtship, the identity of the attendees at their wedding, the identity of the persons residing with them, and the timeframe of her separation from Johnson. The IJ considered the inconsistencies along with Gitau's explanations for them, and ultimately determined that the inconsistencies rendered her testimony not credible. The IJ also found that her other evidence insufficiently corroborated, and actually contradicted, her testimony.

We have reviewed the transcript of Gitau's testimony and the portions of the record said to be inconsistent with that testimony. As to the length of her courtship, though her testimony was arguably inconsistent, this inconsistency may be explained by differing understandings of engagement and dating, or simply by non-malicious inaccuracy, fading memory, or imprecise questioning. Though the IJ mentioned this inconsistency, he did not discuss it in depth, and appeared to place little weight on it. He placed more weight on Gitau's troubles with accurately identifying the guests at her wedding. In her testimony, Gitau identified these guests as her sister, Donald Dennard (her sister's boyfriend), and Peter Hicks. Gitau's 2010 statement to USCIS, however, claimed that the wedding attendees were her sister and a "Peter Smith." She also told USCIS in 2010 that she did not recognize the names Peter Hicks and Donald Dennard. Since there is other evidence that someone by the name of Peter Hicks was Johnson's friend, it

- 6 -

is possible that Gitau's memory simply faded as time passed since the 2004 wedding.  On the whole, though, this was not the type of testimony that got Gitau off on a good foot.

As for who lived with her and when, Gitau's statements were also inconsistent, but only if one excluded the possibility that her mother's brief stays with her were not "living with her." Less easy to explain -- for Gitau -- are her inconsistent statements about a very important point:  when she and Johnson separated.  She told the IJ, repeatedly, that Johnson moved out in January 2007.  Previously, though, she had stated in a declaration to USCIS that Johnson had left in June 2008, and had testified before USCIS that he had left in November 2008.  On appeal, Gitau suggests that Johnson had various types and degrees of departure between 2007 and late 2008.  The IJ -- who actually observed Gitau's testimony -- was not inclined to view it so charitably. He also considered and rejected Gitau's claim that her failure to testify consistently could be attributed to anxiety.

Though the remainder of Gitau's testimonial evidence largely supported her claim, none of it did so decisively, as it consisted primarily of testimony from her sister and uncle, as well as witness statements in affidavits.  Moreover, the IJ also found inconsistencies in the testimony of Gitau's sister, thus reducing even further the persuasive value of this testimony.  And the documentary evidence Gitau provided, consisting of bills,

financial records, and the like, was similarly inconclusive. It does appear that Gitau and Johnson filed a joint federal tax return for 2006 reflecting the address at which Gitau says they then resided together, but Johnson's W-2 forms for that same year show a different address. Gitau also offered copies of statements and bills addressed to the couple, all but one of which post-date the January 2007 claimed date of separation. And certainly it did not help Gitau's cause that the evidence also showed that in 2007 Johnson purported to marry two other individuals seeking residence status in the United States.

On this record, a reasonable factfinder could have gone either way on the question of whether Gitau was credible, and consequently, on the question of whether she carried her burden of proving that she married Johnson in good faith. There being no plausible claim of legal error, we therefore lack any ability to substitute our assessment of the evidence for that of the IJ. Accordingly, we conclude that there was no error in denying Gitau a waiver based on a good faith marriage pursuant to 8 U.S.C. §§ 1186a(c)(4)(B) or (C).

**B.**

As an alternative ground for a waiver, Gitau argued to the IJ and BIA, and contends here, that she would suffer extreme hardship were she to be removed, and thus should have been granted a waiver under 8 U.S.C. § 1186a(c)(4)(A). The government counters

that as a threshold matter, we lack jurisdiction to review the BIA's determination as to extreme hardship, and that in any event, the BIA was correct to deny the waiver.

We are not persuaded by the government's jurisdictional argument. It is true that under 8 U.S.C. § 1252(a)(2)(B)(ii), Congress removed our jurisdiction over any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." However, we have made clear that there is a distinction between questions of law concerning eligibility for relief and the ultimate decision of the Secretary to grant such relief if eligibility is found. See Cho, 404 F.3d at 101–02. Stressing the courts' "customary power to be the final word on the meaning of legal concepts," we have held that we have jurisdiction to review the BIA's application of the law in determining whether the eligibility factors are satisfied, but lack jurisdiction to review the Secretary's final decision to grant or withhold discretionary relief. Id. at 102 ("We hold today . . . that eligibility rulings under section 1186a remain reviewable by the courts . . . .").

The government tries to distinguish Cho -- which dealt with a determination of good faith marriage, as opposed to a determination of extreme hardship -- on the basis that the good faith determination is governed by objective regulatory criteria,

- 9 -

while the extreme hardship determination is not.  However, this is not entirely accurate.  The regulation governing extreme hardship contains two dictates:  the Secretary "shall" consider only the circumstances that arose during the time period of the applicant's conditional residence in the United States,[2] and the Secretary "shall" likewise "bear in mind" that all removals result in some hardship, and the waiver should only be granted for the subset where the hardship is extreme.  8 C.F.R. § 1216.5(e)(1).  This is not dramatically different it its degree of objectivity from the regulatory guidance given for the determination of a good faith marriage;  indeed, the only mandatory consideration under that subsection of the regulation is that the Secretary "shall consider evidence relating to the amount of commitment by both parties to the  marital  relationship."   8  C.F.R.  § 1216.5(e)(2).   The

---

[2] The language of the statute and the language of the regulation differ slightly as to the relevant time period; the former states that the relevant timeframe is only the period of conditional resident status, while the latter would seem to allow for an open-ended timeframe.  Compare 8 U.S.C. § 1186a(c)(4) ("[T]he Secretary . . . shall consider circumstances occurring only during the period that the alien was admitted for permanent residence on a conditional basis.") with 8 C.F.R. § 1216.5(e)(1) ("[T]he director shall take into account only those factors that arose subsequent to the alien's entry as a conditional permanent resident.").  However, the BIA has made clear that the only relevant time period is the period of conditional resident status, and as a result, any event that serves as a basis for a hardship finding must occur during this period, not simply subsequent to the grant of conditional resident status.  See Matter of Munroe, 26 I & N Dec. 428, 435 (BIA 2014).  Gitau does not contend that Matter of Munroe was decided in error, and we assume without deciding that it correctly states the applicable law.

subsection goes on to list certain evidence that <u>may</u> satisfy this requirement, but it does not provide that this evidence constitutes the exclusive set of evidence the director shall consider. <u>See</u> <u>id.</u> § 1216.5(e)(2). Viewed in terms of what is actually mandatory for the Secretary, the differences between the regulatory treatment of the good faith determination and the extreme hardship determination are matters of degree, not kind. Thus, this distinction is not an adequate basis to depart from the holding of <u>Cho</u> that threshold determinations of eligibility for a waiver are reviewable, while the ultimate grant or denial of a waiver is not.

Turning to the merits of Gitau's hardship claim, we have no trouble concluding that the BIA's finding on the question of extreme hardship was supported by substantial evidence.[3] As contemplated by the regulation, removal necessarily involves some hardship, so an applicant must demonstrate hardship that goes beyond those normally attendant to removal. <u>See</u> <u>Id.</u> § 1216.5(e)(1). And the extreme hardship must be due to conditions arising during the applicant's time as a conditional permanent resident. <u>Id.</u>; <u>see</u> <u>also</u> 8 U.S.C. § 1186a(c)(4); note 3, <u>supra</u>.

---

[3] The government contends that the standard of review on this question is abuse of discretion. In support, it cites <u>Gebremichael</u> v. <u>INS</u>, 10 F.3d 28 (1st Cir. 1993). However, that case actually cuts against the government's contention. We noted in <u>Gebremichael</u> that while a motion to reopen or reconsider would be reviewed for abuse of discretion, determinations about statutory eligibility for relief are reviewed for substantial evidence. <u>See</u> <u>id.</u> at 34 n.17.

Here, the BIA and IJ considered the evidence of hardship Gitau put forward, both individually and in the aggregate, and determined that much of the evidence concerning conditions in Kenya did not relate to the relevant period, but instead described general conditions in the country before and after the period. The same was true of evidence concerning changes in Gitau's life, for example, her student loan debt. The IJ and BIA determined that this debt, and the other changes she alleged, also occurred outside of the relevant time period. The only evidence of hardship the IJ considered to be not barred due to timing concerns was Gitau's testimony that it would be impossible for her to find work in her field in her parents' village in Kenya.[4] The IJ (and the BIA, in adopting the IJ's decision) considered this point, but concluded that there was no evidence that Gitau would not be able to find employment somewhere in Kenya, and thus, this hardship would not be extreme. On this record, we cannot say that a reasonable factfinder would have been "compelled" to reach the opposite conclusion, and thus Gitau's challenge fails on substantial evidence review. See Rivas-Mira, 556 F.3d at 4.

---

[4] Even this is arguable, as Gitau based the contention that she was unemployable on the fact that she had an advanced education. As the IJ noted, she acquired her advanced degree in 2004, outside the relevant time period. That said, the IJ appeared to consider this particular form of hardship on the merits and not simply disregard it as outside of the proper timeframe.

## III.

Gitau has failed to meet her burden of demonstrating that the BIA's decision was not supported by substantial evidence. The petition for review is <u>denied</u>.