# United States Court of Appeals
## For the First Circuit

No. 18-1992

JENNIFER AMPOFOWAH TWUM,

Petitioner,

v.

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Stahl, and Thompson,
Circuit Judges.

Evaristus Nkongchu and African Legal Concierge, PLLC, on brief for petitioner.
Elizabeth R. Chapman, Trial Attorney, Joseph H. Hunt, Assistant Attorney General, and Russell J.E. Verby, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, on brief for respondent.

July 9, 2019

**STAHL**, <u>Circuit Judge</u>.  Petitioner Jennifer Ampofowah Twum, a native and citizen of Ghana, asks us to review an order from the Board of Immigration Appeals ("BIA") denying her motion to reopen removal proceedings.  Twum petitioned the BIA to reopen so that she could apply for cancellation of removal under the "special rule" for battered spouses and children, asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  She now alleges that the BIA erred in denying the motion on each of those grounds.  After careful review, we conclude that we are without jurisdiction to review the BIA's denial of "special rule" cancellation.  With respect to the latter three claims, however, we find it appropriate to grant the petition and remand to the BIA for further proceedings consistent with this opinion.

## I.

Twum entered the United States on a J-2 visa as a nonimmigrant spouse of an exchange visitor on or about August 10, 2001.  The "exchange visitor" in question was her then-husband, Clement Asumadu-Baffi, whose arrival proceeded Twum's.  According to Twum, she was forced to marry Asumadu-Baffi in Ghana when she was fifteen, and he subjected her to physical, mental, and sexual abuse both in Ghana and after their reunion in the United States.  At some point in 2001 or 2002, Twum fled from the marital home in Cleveland, Ohio to Worcester, Massachusetts.  She filed for

- 2 -

divorce, which was finalized in February 2002. Twum avers that Asumadu-Baffi continued to threaten her after (and because of) their divorce, stating that he would retake her as his wife or kill her if she ever returned to Ghana.

After moving to Worcester, Twum began a romantic relationship with another Ghanaian, with whom she had two daughters in 2004 and 2007, respectively.[1] She also met and, in June 2007, married Robert Tolson, a United States citizen.

Twum's divorce from Asumadu-Baffi terminated her nonimmigrant status and, on September 22, 2006, the Department of Homeland Security ("DHS") filed a Notice to Appear (the "Notice") charging Twum with removability for remaining in the United States beyond the term of her visa. Through counsel, Twum admitted all of the factual allegations in the Notice and conceded removability at a hearing held on January 9, 2007. Proceedings were continued from that date until June 12, 2007, at which point Twum appeared with a second counsel. One week later, on June 19, 2007, Twum submitted supplemental pleadings and requested relief in several forms, to wit: withholding of removal, asylum, adjustment of status, protection under the CAT, cancellation of removal, and voluntary departure.

---

[1] Twum also has two daughters, both born in Ghana, from her marriage to Asumadu-Baffi. Those daughters moved from Ghana to the United Kingdom, and it does not appear that they ever resided with Twum in the United States.

After her second marriage, Twum sought and received a continuance of the immigration proceedings to await decision on Tolson's then-pending I-130 Petition for Alien Relative to adjust her immigration status based on marriage. In response to that petition, DHS requested documentation evincing Twum's divorce.[2] Neither the couple nor Twum's then-attorney, Ainsworth Jones, responded to DHS's request and, as a result, DHS denied the petition on November 5, 2008. Tolson and Twum refiled the petition shortly thereafter and again sought a continuance; however, the immigration judge ("IJ") denied the motion on February 3, 2009. In the same ruling, the IJ determined that Twum had abandoned her claims for asylum, withholding, and CAT-based relief as of October 16, 2007, had withdrawn her claim for voluntary departure, and could not pursue cancellation of removal based on insufficient time of residency in the United States. As a result, the IJ ordered Twum removed.

Despite that order, DHS subsequently approved Tolson's second I-130 petition, and Twum moved to reopen the removal proceedings to pursue adjustment of her status. Twum based her motion to reopen both on DHS's approval of the I-130 as well as on

---

[2] It is unclear from the record whether DHS sought evidence of Twum's divorce from Asumadu-Baffi or from the father of her American daughters, who Twum had listed on certain immigration paperwork as her spouse but evidently never married.

claimed ineffective assistance by Jones, her prior attorney. The IJ granted the motion to reopen on April 1, 2010.[3]

In response to Twum's ineffective assistance of counsel charge against him, Jones provided DHS with evidence[4] that undercut Tolson's second I-130 petition. After review of that submission and further information provided by the couple, DHS concluded that Twum and Tolson failed to demonstrate by clear and convincing evidence that they entered into their marriage in good faith, rather than for an immigration benefit. DHS revoked its previous approval of Twum's I-130 on March 3, 2011, again placing her in jeopardy of deportation due to the loss of the marriage benefit. Following that revocation, on March 30, 2011, the IJ denied Twum's application for adjustment of status and motion to further continue the proceedings, and again ordered her removal to Ghana. Twum appealed to the BIA, which affirmed the IJ's removal order on March 29, 2012.

The removal order notwithstanding, Twum did not depart the country. At the same time, Twum states that her marriage with Tolson was failing and, in 2015, she filed for divorce. In an

---

[3] The IJ denied without prejudice Twum's initial motion to reopen on June 25, 2009, roughly one month before DHS approved Tolson's I-130 petition.

[4] Neither the precise nature of the evidence nor Jones's motivation for providing such evidence to DHS are evident from this record.

affidavit submitted with her present motion to reopen, Twum states that Tolson began leaving home without explanation and using drugs during those absences. During one such absence, she alleges that Tolson was arrested for robbery, after which point he became physically abusive and threatened to kill her on multiple occasions.

On March 26, 2018,[5] Twum filed a motion to reopen proceedings and stay removal. The impetus for her motion was three-fold, as she sought to apply for cancellation of removal under the special rule for battered spouses of United States citizens under 8 U.S.C. § 1229b(b)(2), asylum and withholding of removal under 8 U.S.C. §§ 1158, 1241(b)(3), and protection under the CAT under 8 C.F.R. §§ 1208.16-1208.18. In support of her application, Twum filed a statement asserting that removal to Ghana would expose both Twum and her two U.S. citizen daughters to "exceptional and extremely unusual hardship." In particular, she pointed to, inter alia, the need to remove her young daughters (then fourteen and eleven years old) from school and into a foreign culture and the purported risk that they will be subject to female genital mutilation ("FGM") and/or face unusual security risks due

---

[5] Twum previously filed the same motion on March 15, 2018, but that filing was rejected for failure to pay or seek waiver of the required filing fee.

to their American citizenship.[6] She also filed an affidavit attesting to her fear that she would face severe physical violence from Asumadu-Baffi if she were to return to Ghana.

The BIA denied the motion to reopen on September 13, 2018. After noting that the motion was untimely, the BIA found that Twum failed to demonstrate her eligibility for an exception to the applicable time limitations. In particular, the BIA concluded that she failed to demonstrate the necessary predicates for either a timeliness waiver or relief under the special rule for battered spouses and, separately, that she did not adequately demonstrate "changed country conditions" that could provide a basis for making an otherwise-belated asylum claim. Finally, the Board declined to exercise its discretionary authority to order sua sponte reopening under 8 C.F.R. § 1003.2(a).

This timely appeal followed.

**II.**

On appeal, Twum contends that the BIA's order denying her motion to reopen erred in two regards. First, she argues that she amply demonstrated her eligibility for a timeliness waiver and relief based on the special rule for battered spouses and that the

---

[6] Twum alleges that, before leaving Ghana, she narrowly escaped two attempts to subject her to FGM, both undertaken at Asumadu-Baffi's insistence. In addition, her motion to reopen included several appended reports and articles concerning FGM practices and trends in Ghana.

- 7 -

BIA's decision to the contrary is unsupportable on the record. Second, Twum contends that she made a sufficient demonstration of both "changed country conditions" within Ghana and her substantive entitlement to asylum, withholding of removal, and CAT-based relief to merit reopening on those grounds.[7] We consider these arguments in turn.

## A. Special Rule Cancellation of Removal for Battered Spouses

Under the "special rule for battered spouse[s] or child[ren]," the Attorney General may cancel the removal of an otherwise deportable alien who demonstrates, <u>inter alia</u>, that he or she has been "battered or subjected to extreme cruelty by a spouse or parent who is or was a United States citizen" or a "lawful permanent resident." 8 U.S.C. § 1229b(b)(2)(A)(i)-(ii). A separate section of the statute extends the period for filing motions to reopen based on the special rule, allowing one year

---

[7] In her reply brief, Twum asserts in passing that our review should also encompass the BIA's March 29, 2012, order of removal. In this regard, she is mistaken. The time to review the order of removal has long since passed, 8 U.S.C. § 1252(b)(1), and a motion to reopen does not serve as a vehicle for reinvestigating the merits of the underlying decision, <u>see</u> <u>Zhang</u> v. <u>I.N.S.</u>, 348 F.3d 289, 292 (1st Cir. 2003) ("[B]ecause [petitioner] appealed the BIA's . . . denial of asylum well over the thirty-day limit, we lack jurisdiction to review the underlying denial.").

For its part, the Government contends that we lack jurisdiction to consider the BIA's discretionary decision to deny <u>sua sponte</u> reopening. We need not consider that issue, however, as Twum does not present any challenge to that ground for denying reopening. <u>See</u> <u>Xiao He Chen</u> v. <u>Lynch</u>, 825 F.3d 83, 89 n.5 (1st Cir. 2016).

from the final entry of the order of removal as a matter of course and further permitting that "the Attorney General may, in the Attorney General's discretion, waive [the one-year] time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child." Id. § 1229a(c)(7)(C)(iv)(III).

Careful readers will note that these statutory sections implicate not one but two levels of discretion: the Attorney General is given discretion to extend the time to file for reopening based on the special rule and also to cancel the removal of an alien who demonstrates his or her eligibility under that rule. The Government argues that this discretionary power strips us of jurisdiction to entertain Twum's arguments, pointing to 8 U.S.C. § 1252(a)(2)(B), which states:

> [N]o court shall have jurisdiction to review
> . . .
> (i) any judgment regarding the granting of relief under section . . . 1229b of this title, or
> (ii) any [] decision or action of the Attorney General . . . the authority for which is specified under this subchapter[8] to be in the discretion of the Attorney General . . . .

There are exceptions only for "constitutional claims or questions of law." Id. § 1252(a)(2)(D).

---

[8] The "subchapter" in question is Title 8, Chapter 12, Subchapter II of the U.S. Code, which includes the timeliness waiver in 8 U.S.C. § 1229a(c)(7)(C)(iv)(III).

- 9 -

It is evident without question that the statute leaves final determination on whether to grant timeliness waivers and cancellation of removal to the Attorney General's discretion and so places those decisions beyond our review.[9] The only question left to us is whether that unreviewable discretion also extends to the predicate question of eligibility, i.e. the BIA's determination as to whether Twum demonstrated "extraordinary circumstances" or "extreme hardship" within the meaning of the waiver provision or that she was "battered or subjected to extreme cruelty" under the cancellation provision. The Government's contention that Twum's arguments fall beyond our reach is amply supported by caselaw from other circuits, which have largely declined jurisdiction to second-guess BIA decisions denying waivers or cancellation absent an evident constitutional or legal challenge. See, e.g., Joseph v. Lynch, 793 F.3d 739, 742 (7th Cir. 2015) (as to timeliness waiver); Guzman-Munoz v. U.S.

---

[9] In her reply, Twum contends that the Supreme Court's decision in Kucana v. Holder, 558 U.S. 233 (2010), preserves the courts' ability to review even discretionary decisions "without any limitations." She overreads Kucana, however, which addressed only whether decisions on motions to reopen described by regulation as discretionary were shielded from review by Section 1252(a)(2)(B)(ii). Id. at 252-53. In so doing, the Court differentiated the regulation from "decisions specified by statute to be in the discretion of the Attorney General and therefore shielded from court oversight by [Section] 1252(a)(2)(B)(ii)," id. at 248 (emphasis added, internal quotation marks omitted), and expressly called out the waiver provision at issue here as one such statutory grant of discretion, id. at 243 n.10.

Att'y Gen., 733 F.3d 1311, 1314 (11th Cir. 2013) (determination that alien was not a battered spouse is discretionary and not subject to review); Rosario v. Holder, 627 F.3d 58, 63 (2d Cir. 2010) ("BIA determinations as to whether an alien has been 'battered or subjected to extreme cruelty' require the application of law to fact, rather than statutory interpretation. As such, we have jurisdiction to review these determinations only when the BIA applies an incorrect law or legal standard."). But see Cardenas v. Lynch, 669 F. App'x 354, 355 (9th Cir. 2016) (unpublished) ("The determination of whether extraordinary circumstances are present is legal in nature, because it involves the application of the law to undisputed facts.").

Our caselaw, however, is somewhat more equivocal. Though this court has not addressed the particular provisions in question, it has considered the interplay of Section 1252(a)(2)(B) and other statutory grants of discretion. As a general matter, those decisions support the thrust of the Government's argument: "where Congress has enacted a jurisdictional wall, an alien cannot scale it simply by 'relitigat[ing] whether the factors relevant to [the] discretionary relief were appropriately weighted by the IJ and the BIA." Mele v. Lynch, 798 F.3d 30, 32 (1st Cir. 2015) (quoting Urizar-Carrascoza v. Holder, 727 F.3d 27, 32 (1st Cir. 2013)) (alterations in original); see also Elysee v. Gonzales, 437 F.3d 221, 224 (1st Cir. 2006). Most pertinently,

- 11 -

this court's 2013 decision in Castro v. Holder expressly concluded that we lacked jurisdiction over a challenge to the BIA's determination that a petitioner failed to show that he was "battered or subjected to extreme cruelty" in the context of a separate immigration statute. 727 F.3d 125, 130 (1st Cir. 2013). In so holding, the panel found that neither the relevant statute nor the implementing regulation "contemplate an objective legal standard" for finding that an alien satisfied that criteria, and so the BIA's determination on that point was purely discretionary. Id. at 129-30.

Other cases from this circuit, however, have drawn a narrow distinction between the BIA's ultimate decision to grant or deny discretionary relief and its determination as to whether an alien is eligible for such relief in the first instance. One recent decision considered a remarkably similar statute to that at issue here, which states that "[t]he Secretary of Homeland Security, in the Secretary's discretion, may [grant unconditional permanent resident status to certain otherwise ineligible aliens] if the alien demonstrates that," inter alia, "extreme hardship would result if such alien is removed." 8 U.S.C. § 1186a(c)(4)(A). The panel held that it had jurisdiction to review the BIA's determination as to whether the alien had demonstrated "extreme hardship," holding that "there is a distinction between questions of law concerning eligibility for relief and the ultimate decision

- 12 -

. . . to grant such relief if eligibility is found." Gitau v. Sessions, 878 F.3d 429, 433 (1st Cir. 2017). Turning to the implementing regulation, Gitau found that its definition of "extreme hardship" provided sufficiently "objective regulatory criteria" to merit treating the BIA's determination on that point as non-discretionary and so subject to review. Id. at 434; see also Cho v. Gonzales, 404 F.3d 96, 99-103 (1st Cir. 2005) (same as to precondition of marriage in good faith).

The juxtaposition of these lines of cases poses a difficult question, but it is one which we are ultimately bound to resolve against exercising jurisdiction. On the one hand, a number of the factors stressed by Gitau are present here. Similar to the statute at issue in that case, the provisions under consideration here could be read to distinguish between discretionary decisions to grant or deny requested relief and the underlying question of whether an applicant is eligible for such relief in the first instance. Moreover, the underlying regulations might be viewed as offering "objective regulatory criteria": they expressly enumerate certain categories of violence, threats, and psychological and sexual abuse that fall within the regulation, while leaving open the possibility that other forms of abuse may also qualify an alien for relief. See 8 C.F.R. § 204.2(c)(1)(vi). We do not write on a clean slate, however, and the application of Castro's holding -- that the BIA has unreviewable discretion to determine whether an

- 13 -

alien was "battered or subjected to extreme cruelty" -- to this appeal is unmistakable. While Castro considered a separate act, its holding is grounded in the conclusion that statutory language and implementing regulations identical to those at issue here do not "contemplate an objective legal standard." 727 F.3d at 129. It is axiomatic that we presume identical language in separate statutes with similar purposes carry the same meaning, Smith v. City of Jackson, Miss., 544 U.S. 228, 233 (2005), and so we find it inescapable that we should interpret the "special rule" cancellation provision in concert with Castro's earlier construction of the same phrase, cf. San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010) ("Under the law of the circuit rule, however, mere disagreement by a coequal court with a panel decision will not divest that opinion of its customary stare decisis effect within the circuit."). Therefore, we conclude that we are without jurisdiction to review challenges to the BIA's determination as to whether a petitioner has been "battered or subjected to extreme cruelty" within the meaning of Section 1229b(b)(2).[10]

---

[10] Castro's holding does not speak to the distinct "extraordinary circumstances or extreme hardship" demonstration needed to obtain a waiver of untimeliness under Section 1229a(c)(7)(C)(iv)(III). We do not address that point, however, as our conclusion that we lack jurisdiction over the final relief obviates the need to decide whether the motion for such relief was timely. See Zajanckauskas v. Holder, 611 F.3d 87, 90 (1st Cir.

With this conclusion in hand, we can proceed no further in assessing Twum's arguments based on the special rule for battered spouses. Twum does not raise a colorable legal or constitutional challenge to the BIA's ruling as to either the timeliness waiver or cancellation of removal, instead arguing only that she was "clearly eligible" for such relief based on her proffered evidence.[11] Those are precisely the types of "attacks on the factual findings made and the balancing of factors engaged in by the" BIA that cannot be reviewed under Castro. 727 F.3d at 128 (internal quotation marks and citation omitted). We therefore are compelled to dismiss that portion of Twum's petition for lack of jurisdiction.

## B. Asylum, Withholding of Removal, and CAT-based Relief

Twum next argues that her removal proceedings should be reopened so that she can pursue claims for asylum, withholding of removal, and CAT-based relief. While Twum's motion below features

_____

2010) ("Even if we agree with Petitioner as to the legal issues he raises on appeal, the result in his case . . . is pre-ordained by the Agency's discretionary holding.").

[11] We note that Twum does not argue that the BIA entirely ignored her evidence, which some decisions have treated as raising a legal claim not subject to Section 1252's jurisdictional bar. See, e.g., Huang v. Holder, 463 F. App'x 599, 601-02 (7th Cir. 2012) (unpublished) ("We have recognized that a contention that the Board completely ignored the evidence put forth by a petitioner is an allegation of legal error. In other words, the Board commits legal error when it fails to exercise its discretion at all." (internal quotation marks and citation omitted)).

- 15 -

myriad grounds for relief based on potential harms to herself and her daughters, she whittles these to down to two points in the present appeal: first, that she (and her daughters) would face a risk of FGM and other "traditional and customary practices" directly targeting Ghanaian women; and, second, that she would be "forced back into the home of" Asumadu-Baffi -- who has returned to Ghana -- as a result of Ghanaian marital customs.

As a general proposition, motions to reopen must be filed within ninety days of the final order of removal. 8 U.S.C. § 1229a(c)(7)(c)(i); 8 C.F.R. § 1003.2(c)(2). However, that limit does not apply to petitions seeking either asylum or withholding of removal if the applicant presents evidence of "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). "To establish changed country conditions, the evidence must demonstrate the intensification or deterioration of country conditions, not their mere continuation," Xin Qiang Liu v. Lynch, 802 F.3d 69, 76 (1st Cir. 2015) (internal quotation marks and citation omitted), and the petitioner bears the burden of making such showing through a "convincing demonstration," id. In evaluating whether a change has occurred, "the BIA compares the evidence of country conditions submitted

with the motion to those that existed at the time of the merits hearing below." Haizem Liu v. Holder, 727 F.3d 53, 57 (1st Cir. 2013) (internal quotation marks, alteration, and citation omitted).

Once past this procedural hurdle, an alien seeking to secure reopening must present a "prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief." Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2007). "To make a prima facie case for asylum in the context of a motion to reopen, the applicant need only produce objective evidence showing a 'reasonable likelihood' that he [or she] will face future persecution based on" one of five enumerated statutory grounds: race, religion, nationality, membership in a particular social group, or political opinion. Smith v. Jones, 627 F.3d 427, 437 (1st Cir. 2010) (internal quotation marks and citation omitted). "An applicant may satisfy this burden through proof of past persecution, which creates a rebuttable presumption of a well-grounded fear of future persecution" or, alternatively, by showing "both that he or she genuinely fears such persecution and that an objectively reasonable person in his or her circumstances would fear such persecution." Jutus v. Holder, 723 F.3d 105, 110-11 (1st Cir. 2013) (internal quotation marks, alterations, and citations omitted); see 8 C.F.R. §§ 208.13(b)(1), 1208.13(b)(1). "A 'reasonable likelihood' means showing a realistic chance that

the petitioner can at a later time establish that asylum should be granted."  Smith, 627 F.3d at 437 (internal quotation marks and citation omitted).

"The BIA enjoys considerable latitude in deciding whether to grant or deny motions to reopen . . . and we review the BIA's denial of a motion to reopen only for abuse of discretion." Wanjiku v. Barr, 918 F.3d 215, 220-21 (1st Cir. 2019) (internal quotation marks, alterations, and citation omitted).  "Under that standard, we uphold the BIA's decision 'unless the petitioner can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational manner.'"  Id. at 221 (quoting Bbale v. Lynch, 840 F.3d 63, 66 (1st Cir. 2016)).

Measured against this standard, Twum's first claim for relief based on FGM and other "traditional" practices falls short. As the BIA correctly noted, Twum's proffered evidence fails to demonstrate a material change in FGM practices in that country. While Twum's evidence submitted in connection with her motion suggests that FGM was a problem both before and after her removal proceedings in 2011 and 2012, it does not reflect any escalation in the frequency of that practice subsequent to her prior merits hearing.  The same must be said of the other practices of which she complains, such as forced marriage and polygamy.  We do not mean to minimize or downplay the horror of any risk of being subject to FGM; rather, we stress only that we cannot intervene

absent a showing of changed circumstances.[12]  See, e.g., Sánchez-Romero v. Sessions, 865 F.3d 43, 46 (1st Cir. 2017) ("[G]rave conditions that remain grave do not equate to intensification . . . .").

In contrast, however, the BIA did not make a finding -- one way or the other -- regarding changed country conditions as to Twum's second claimed ground for relief, i.e. that Asumadu-Baffi's return to Ghana places her in jeopardy of being returned to her abusive former marriage.  Instead, it considered only whether her application made out a prima facie showing of entitlement to asylum on that basis.  We follow the BIA's lead and so proceed directly to the substance of Twum's asylum claim.[13]

In denying relief, the BIA did not challenge the factual foundations of Twum's claim, most notably that she was abused and threatened by Asumadu-Baffi[14] and that Asumadu-Baffi has now

_____

[12]  Because we conclude that the BIA did not abuse its discretion in finding a lack of changed country conditions, we need not further consider its conclusion that Twum failed to make a prima facie showing that she would be eligible for asylum based on the risk that she (or her daughters) would be subject to FGM. See Haizem Liu, 727 F.3d at 58 ("Where a petitioner fails to establish changed circumstances, it is not necessary to reach the issue of whether she has made out a prima facie case for relief.").

[13]  We decline to offer any opinion as to whether Asumadu-Baffi's return to Ghana is a cognizable change in country conditions.

[14]  We note briefly one distinction between this set of claims and Twum's special rule claim.  As the BIA correctly noted, Asumadu-Baffi's alleged domestic abuse is not cognizable under the

- 19 -

returned to Ghana. Nevertheless, the BIA found Twum's claims of threatened future harm were "unduly speculative" because she failed to "offer[] evidence of any recent threats made against her or any evidence that she has [] been contacted by her ex-husband since [2002]."

It is worth stopping here to reiterate what the BIA did and did not find. The agency does not expressly or impliedly conclude that domestic abuse is not a cognizable type of harm, nor does its opinion suggest a finding that Twum failed to link the harm suffered to one of the enumerated statutory grounds.[15] Instead, the BIA appears to have rested solely on the conclusion that the remoteness of Twum's past abuse removed the objective foundation of any fear of future harm.

_____

"special rule," which is limited by its terms to abuse committed by U.S. citizens and legal permanent residents. 8 U.S.C. § 1229b(b)(2)(A)(i)(I)-(III). That restriction does not apply to Twum's other bases for seeking relief.

[15] The question of whether and under what circumstances domestic violence and other forms of private violence can constitute "persecution" is the subject of ongoing litigation outside of this circuit. See Grace v. Whitaker, 344 F. Supp. 3d 96 (D.D.C. 2018), appeal docketed sub nom. Grace v. Barr, No. 19-5013 (D.C. Cir. 2019). The requirements for showing that a petitioner is a member of a "particular social group" based on domestic abuse are also the subject of ongoing litigation. See Matter of A-B-, 27 I & N Dec. 316 (A.G. 2018); see also Rivas-Duran v. Barr, No. 17-1782, — F.3d —, 2019 WL 2498234, at *4 (1st Cir. June 17, 2019). We need not, and do not, address those questions here.

It is here that we find fault in the BIA's opinion, the ambiguities of which hinder effective review. Twum argues that her evidence below establishes that she suffered past persecution,[16] and the BIA's opinion is plausibly read to implicitly accept that premise: in emphasizing only remoteness, the agency's opinion is susceptible to the interpretation that a showing of closer-in-time abuse under the same circumstances would provide Twum with grounds for an asylum claim. This, in turn, raises questions about the BIA's adherence to the regulations. As noted above, the petitioner's showing of past persecution gives rise to a presumption that he or she would face future persecution. See, e.g., Smith, 627 F.3d at 437. This presumption is rebuttable if the agency finds by a preponderance of the evidence that, inter alia, there has been a fundamental change in circumstances; however, it is incumbent upon the agency to clearly make that

_____

[16] While the Government does not pursue any waiver argument, we acknowledge that Twum did not explicitly call out "past persecution" by name in her brief to the BIA. "Under the exhaustion of remedies doctrine, theories insufficiently developed before the BIA may not be raised before this court." Silva v. Gonzales, 463 F.3d 68 (1st Cir. 2006); see also 8 U.S.C. § 1252(d)(1). Here, however, we find that the argument was fairly placed before the BIA, as Twum's claim for asylum centers on her allegation that she "suffered serious emotional, physical and psychological abuse [at] the hands of [Asumadu-Baffi] in Ghana" and her contention that she would suffer the same violence and worse if returned to that country. Accordingly, we see no reason to elevate form over function where the substance of Twum's past persecution claim was squarely before the agency.

finding.[17]  Cf. Fergiste v. I.N.S., 138 F.3d 14, 18-19 (1st Cir. 1998) (BIA's failure to expressly apply and rebut presumption after finding of past persecution constitutes legal error).  "In this case, it is by no means clear that the BIA accepted [Twum's] past persecution claim, applied a regulatory presumption of a well-founded fear of persecution, and concluded that evidence of changed circumstances refuted that presumption."  Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 23 (1st Cir. 2004); cf. also El Moraghy v. Ashcroft, 331 F.3d 195, 204-05 (1st Cir. 2004)  ("The absence of reasoned discussion of past persecution undercuts any meaningful review of the IJ's fear of future prosecution finding, because we do not know whether [the petitioner] should have had the benefit of the regulatory presumption of fear of persecution based on prior events.").

If, on the other hand, the BIA did not intend to indicate its acceptance that Twum's past abuse constituted remediable persecution, then its basis for ruling against her is unclear to us from the face of this opinion and so incapable of meaningful

---

[17] We also note that the burden of rebutting the presumption based on past persecution falls to the Government, not the applicant.  See Hernandez-Barrera, 373 F.3d at 23.  Here, the BIA's choice of words -- indicating that Twum did "not offer[] evidence of any recent threats made against her or any evidence that she has . . . been contacted by her ex-husband" -- may be viewed as impermissibly shifting the burden to Twum, which would also constitute legal error.  Id. at 24.

review.  In either event, the proper remedy is for us to remand to the agency for further examination and explication of its decision.[18]  See id. at 26 ("[I]n the absence of a reasoned finding that [petitioner] did not suffer past persecution or that the [Government] met its burden of overcoming a regulatory presumption of future persecution based on past persecution, we remand."); cf. Larngar v. Holder, 562 F.3d 71, 80 (1st Cir. 2009) (remand appropriate where basis for BIA's determination unclear from its opinion).

**III.**

For the foregoing reasons, Twum's petition for relief under the special rule for battered spouses is dismissed for lack of jurisdiction, and her petition for review of her asylum, withholding of removal, and CAT-based claims is denied in part and granted in part.  The BIA's opinion is vacated in part, and the matter is remanded for further proceedings consistent with this opinion.

---

[18] The same flaws prevent further evaluation of Twum's claim for withholding of removal.  See 8 C.F.R. §§ 208.16(b)(1), 1208.16(b)(1) (finding of past persecution creates presumption of entitlement to withholding of relief).  Likewise, the Government offers no reason to differentiate between its arguments as to why we should deny Twum's request for asylum and withholding and for CAT-based relief, and so remand is appropriate for that issue as well.