**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 20-2074

KEITH GARFIELD WILLIAMS,

Petitioner,

v.

MERRICK B. GARLAND,[*] Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Lipez, and Howard,
<u>Circuit Judges</u>.

Justin Conlon, with whom Law Offices of Justin Conlon was on brief, for petitioner.

Stephen Finn, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Brian Boynton, Acting Assistant Attorney General, Civil Division, and Mary Jane Candaux, Assistant Director, Office of Immigration Litigation were on brief, for respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr.

July 2, 2024

**HOWARD**, **Circuit Judge**.　Petitioner Keith Garfield Williams argues that the Board of Immigration Appeals (BIA) erred in ordering his removal.　After careful consideration, we uphold the BIA's order.

**I.**

Williams is a native and citizen of Jamaica but has lived as a lawful permanent resident in the United States since 1985. He came to the U.S. at age nineteen and since then has left the country only to attend his father's funeral.　He married Eva Williams in 1989, and they remained together until about 2000.　In 1991, he had sexual intercourse with his twelve-year-old niece (the daughter of Eva's sister).　In 1993, he pled guilty to two counts of first-degree sexual assault and two counts of risk of injury to a minor in relation to that conduct.　Williams was released after serving nine months in jail, was required to register as a sex offender, and successfully completed four years of counseling and probation.　Since his release, he has accrued no further criminal history.

In February 2020, the Department of Homeland Security (DHS) served Williams with a notice to appear, alleging that he was removable based on his sexual assault convictions.　Appearing in front of an immigration judge (IJ) in Boston Immigration Court, Williams admitted that he was removable but argued that he was eligible for a waiver of removal under former § 212(c) of the

Immigration and Nationality Act (INA). An evidentiary hearing was held on his waiver request on May 4, 2020.

Williams and his long-term partner Mia Rogers both testified at this hearing. Their testimony explained that during and after the time period when he assaulted his niece, Williams was a heavy drinker. However, he has remained sober since 2013, when he went into a coma and was told by doctors that he needed to stop drinking. He now suffers from cirrhosis of the liver, diabetes, and nerve damage in his leg. As a result, Williams's mobility is limited, and he walks with a cane. Up until his medical incident in 2013, he had remained employed, working at a tire company, a Caribbean market, and a Caribbean restaurant. Following the coma, Williams has been unable to work and relies on social security payments.

Rogers is a U.S. citizen. She and Williams met in 2002 and have a daughter together. At the time of the immigration hearing, their daughter was in high school and was an honors student. Various family members, including their daughter, wrote to the IJ in support of Williams's request for a waiver of removal.

Rogers's testimony to the IJ included the following details: Williams's sobriety since 2013 has had a positive impact on his demeanor. Additionally, during their relationship, Williams told Rogers about his criminal record, but after observing Williams's conduct, Rogers has seen no signs of predatory behavior

from Williams. As a result, she is not nervous to leave their daughter with Williams. Williams and their daughter are also close.

Applying the factors from In re Marin, 16 I. & N. Dec. 581 (B.I.A. 1978), the IJ granted Williams's request for a waiver of removal. The IJ found that while there were adverse factors weighing against granting relief, such as the seriousness of the crimes for which he pled guilty, Williams had demonstrated unusual or outstanding equities. Specifically, the IJ found that Williams "demonstrated a period of 28 years of rehabilitation" -- that is, he had had no further contact with law enforcement. His extended family contacts in the U.S. constituted another positive factor. The IJ also noted that she gave Rogers's testimony "significant weight."

DHS appealed. In October 2020, the BIA reversed the IJ's decision and ordered Williams's removal. The BIA explained that its review of questions of law, discretion, or judgement was de novo, and it therefore reviewed de novo the IJ's exercise of discretion. It identified Williams's criminal convictions as a "serious negative factor." The BIA also noted that Williams had "significant positive equities weighing in his favor," including his "significant family ties to the United States, including his high school age daughter, who is thriving in school and is close to her father."

Ultimately, however, the BIA concluded that these positive equities were "insufficient to outweigh the serious negative factor of [Williams's] criminal convictions involving the rape of his 12-year[-]old niece." The BIA therefore ordered Williams's removal. The BIA's reversal was a 2-1 decision, but the dissent was without an opinion.

Williams timely petitioned our court for review.

**II.**

Williams argued in front of the IJ that he was eligible for a waiver pursuant to former § 212(c) of the INA. Previously codified at 8 U.S.C. § 1182(c), the subsection read: "Aliens lawfully admitted for permanent residence . . . who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General." 66 Stat. 163, 187 (1952).[1] While § 212(c) has been repealed, the parties agree that it is still applicable to Williams, see INS v. St. Cyr, 533 U.S. 289, 326 (2001), and that he meets the statutory requirements to be eligible for this discretionary relief. We therefore review only the BIA's determination that Williams did not merit a favorable exercise of discretion.

---

[1] The provision was interpreted by the BIA "to authorize any permanent resident alien with 'a lawful unrelinquished domicile of seven consecutive years' to apply for a discretionary waiver from deportation." INS v. St. Cyr, 533 U.S. 289, 295 (2001) (citing In re Silva, 16 I. & N. Dec. 26, 30 (B.I.A. 1976)).

For discretionary decisions about removal, we typically have jurisdiction over only a limited set of issues: questions of law and constitutional claims. 8 U.S.C. § 1252(a)(2)(B)-(D); see De Araujo v. Gonzáles, 457 F.3d 146, 153-54 (1st Cir. 2006). Williams does not raise any constitutional challenges; thus, we have jurisdiction only if Williams's claims raise questions of law.

The parties dispute whether Williams's claims of error present such questions. However, given that "resolution on the merits of the case is straightforward," we will bypass the statutory jurisdiction question and proceed to the merits.[2] Chun Mendez v. Garland, 96 F.4th 58, 65 (1st Cir. 2024) (quoting Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021)).

We have previously reviewed the denial of § 212(c) relief for abuse of discretion. See Choeum v. INS, 129 F.3d 29, 44 (1st Cir. 1997). Williams makes two claims of error: first, that the BIA failed to appropriately consider Rogers's testimony; second, that the BIA unlawfully departed from its settled course of adjudication.

---

[2] The jurisdictional question is particularly complicated by the Supreme Court's recent statement that, "if the IJ decides a noncitizen is eligible for [discretionary relief] at step one, his step-two discretionary determination on whether or not to grant [relief] in the particular case is not reviewable as a question of law." Wilkinson v. Garland, 601 U.S. 209, 225 n.4 (2024). Both parties filed Rule 28(j) letters following Wilkinson that reaffirmed their positions on the jurisdictional issue.

- 7 -

Ultimately, neither claim is successful.

**A.**

Williams first argues that it would be error for the BIA to "total[ly] fail[] to consider important evidence in the record"; "fail[] to address a critical finding of the IJ"; or "totally overlook[] and . . . seriously mischaracterize[] facts," and that it did so with respect to Rogers's testimony. Even assuming we have jurisdiction over this claim and that Williams is correct that the BIA ignoring evidence would require remanding his case for further consideration, see Twum v. Barr, 930 F.3d 10, 20 n.11 (1st Cir. 2019), the record does not reveal that such a failure occurred here. See Ayeni v. Holder, 617 F.3d 67, 73 (1st Cir. 2010).

In reaching her conclusion, the IJ relied in part on Rogers's testimony. But contrary to Williams's claims, the BIA on appeal did not "completely ignore[]" the IJ's finding or ignore Rogers's testimony. Instead, the BIA cited the significant positive equities found by the IJ that weighed against Williams's removal. Specifically, the BIA noted that the IJ "recognized the respondent's significant family ties to the United States, including his high school age daughter, who is thriving in school and is close to her father." Affirming the IJ's findings in this regard, the BIA cited the section of the IJ's opinion in which she credited Rogers's testimony. The BIA also cited directly to the

- 8 -

portions of the transcript of the hearing where Rogers testified that Williams was close with their daughter and supportive of her. The BIA further acknowledged Williams's positive equities, noting that "the respondent's equities are certainly significant."

Williams argues that the BIA's citations are not sufficient discussion and that affirming would allow the BIA to immunize itself from review merely by citing to each page of the IJ's opinion. But we are faced with no such abuses here. The BIA's citations to the IJ's opinion were specific and supplemented by citations to the relevant pages of the hearing transcript. Furthermore, the BIA's discussion clearly corresponded to the content discussed on the cited pages. These references in the BIA's opinion belie the argument that the BIA "total[ly] fail[ed] to consider important evidence in the record"; "fail[ed] to address a critical finding of the IJ"; or "totally overlook[ed]" certain facts.

Nor does Williams point to any specific way in which the BIA "mischaracterized" facts. Thus, even assuming that Williams's appeal is unencumbered by jurisdictional issues, and that ignoring Rogers's testimony would be error for which we would remand, he fails to make out a successful claim.

**B.**

In his second claim, Williams argues that the BIA erred by departing from its settled course of adjudication. The record

does not reveal such a departure.

> We have previously stated that, when the BIA
>
> announces and follows -- by rule or by settled course of adjudication -- a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) c[an] constitute action that must be overturned as arbitrary, capricious, [or] an abuse of discretion within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

Thompson v. Barr, 959 F.3d 476, 484 (1st Cir. 2020) (second alteration in original) (quoting INS v. Yueh-Shaio Yang, 519 U.S. 26, 32 (1996)). To convince us that the BIA unlawfully departed from a settled course of adjudication in his case, Williams surveys seventy-six BIA decisions involving § 212(c) waivers.[3] From this survey, he argues that the BIA has a settled course of adjudication that grants § 212(c) waivers in cases where a noncitizen has a single conviction that is over twenty-five years old. By denying him relief then, Williams contends that the BIA has acted unlawfully.

Even assuming that we have jurisdiction over this claim, it still falls short. Start with the fact that Williams's case is analytically distinct from Thompson. In Thompson, we considered

---

[3] Williams does not explain how he selected these seventy-six cases but submitted a supplement to this court that contained the decisions, all of which are unpublished. In our discussion below, we have provided Westlaw citations where available.

a clear binary question: Whether a pardon from the Connecticut Board of Pardons and Paroles qualifies as "a full and unconditional pardon . . . by the Governor of any of the several States." Id. (quoting 8 U.S.C. § 1227(a)(2)(A)(vi)). The BIA decided that the petitioner's did not. Id. However, the BIA had previously accepted Connecticut pardons (and pardons from Georgia, which were "substantively identical") as satisfying the statutory requirement. Id. at 485, 488–89. We thus held that it was not appropriate for the BIA to reach different outcomes in cases that presented the same question. Id. at 489–90.

But the situation here is distinguishable. As an initial matter, in adjudicating Williams's case, the BIA was tasked not with considering a binary question but rather balancing many factors to determine whether he merited a favorable exercise of discretion. See In re Marin, 16 I. & N. Dec. at 584. In large part because of that, we cannot say that the cases Williams presents to us address facts sufficiently similar to those in his case to show the BIA departed from a settled course of adjudication. For example, of the cases that he offers where the BIA granted relief, only four involve crimes against minors.[4] And of those four, it is not apparent that any involve sexual

_____

[4] In re David Bradford Raitt, 2004 WL 1739078 (B.I.A. May 19, 2004); In re Mario Acosta-Campos, 2004 WL 2374871 (B.I.A. Aug. 18, 2004); In re A-A-B- (B.I.A. Aug. 23, 2018); In re J-G-L- (B.I.A. May 18, 2020).

- 11 -

intercourse with a minor family member, like this one does.  Thus, these cases are not sufficiently comparable to Williams's such that they constrained the BIA's discretion in resolving his case.[5]

Rather than show that the BIA applied different rules to similarly situated applicants for relief, the cases provided by Williams demonstrate that the BIA applied the same rules, encountered differently situated applicants, and as a result, reached different conclusions.[6]  We cannot say that it abused its discretion by doing so.

*** 

The petition for review is <u>denied</u>.

---

[5] In fact, if we were to divine a trend in the cited BIA decisions, it appears that the BIA more frequently denies relief to noncitizens like Williams, who have been convicted of having sexual intercourse with minor family members.  <u>See</u> <u>In re Gustavo Segoviano-Mendoza</u>, 2004 WL 2374479 (B.I.A. July 27, 2004) (minor step-daughter); <u>In re Armand Melanson</u>, 2004 WL 1398732 (B.I.A. Apr. 9, 2004) (minor daughter); <u>In re Francisco Garza-Crus</u>, 2004 WL 2374344 (B.I.A. Sept. 13, 2004) (minor daughter); <u>In re Manuel de Jesus Agustin</u>, 2004 WL 2952098 (B.I.A. Nov. 17, 2004) (minor niece).

[6] Even if the BIA did have a general policy of granting § 212(c) relief to noncitizens who had a single conviction from more than twenty-five years ago, Williams fails to explain why he would qualify given that he pled guilty to two counts each of (1) first-degree sexual assault; and (2) risk of injury to a minor.

- 12 -