KAYATTA, Circuit Judge. Puerto Rico Telephone Company, Inc., (PRTC) sought permission from the Puer-to Rico Telecommunications Regulatory Board (TRB) to offer internet protocol television service to the residents of Puer-to Rico. At the time, San Juan Cable LLC, doing business as “OneLink,” provided cable television service to residents of several municipalities in Puerto Rico, including San Juan. Not eager to face competition, OneLink petitioned the TRB and other government officials and tribunals, including Commonwealth and federal courts, to deny, slow down, or otherwise impede PRTC’s efforts. After eventually obtaining the needed permission from the TRB, PRTC filed this antitrust action claiming that OneLink’s interference with PRTC’s permitting efforts constituted unlawful monopolization and attempted monopolization in violation of both the Sherman Act, 15 U.S.C. § 2, and the Puerto Rico Anti-Monopoly Act, P.R. Laws Ann. tit. 10, §§ 257-276. Granting summary judgment to OneLink, the district court concluded that OneLink’s actions were immunized from suit under the Noerr-Pennington doctrine, which conditionally protects the right to petition the government. See E.R.R. Presidents Conference v. Noerr Motor Freight, Inc. (Noerr), 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United Mine Workers of Am. v. Pennington (Pennington), 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In so ruling, the district court rejected PRTC’s argument that the facts could support a finding that OneLink abused its right to petition and could be found liable under the so-called “sham” exception to the Noerr-Pennington immunity. See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 511-12, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (extending both Noerr-Pennington immunity and the sham exception to petitioning of courts and administrative agencies). For the following reasons, we agree with the district court that the facts in this case could not subject OneLink to liability under the sham exception. I. A. The parties’ disagreement on appeal begins with OneLink’s win-loss record in its multi-tribunal petitioning activity aimed at impeding PRTC’s efforts to secure permission to compete against OneLink. A detailed description of OneLink’s filings with the TRB, the Puerto Rico courts, and the federal courts, its communications with Puerto Rico officials and federal officials, and the resolutions of those filings and communications can be found in the district court’s two published opinions. See P.R. Tel. Co. v. San Juan Cable Co. (PRTC I), 196 F.Supp.3d 207, 215-24 (D.P.R. 2016); P.R. Tel. Co. v. San Juan Cable Co. (PRTC II), 196 F.Supp.3d 248, 253-98 (D.P.R. 2016). PRTC claims that those filings and communications collectively constituted twenty-four “petitions” in the form of requests that a court or other government tribunal, agency, or official take action adverse to PRTC’s license application, and that OneLink failed to prevail on any of those petitions. OneLink avoids taking a firm position on its win-loss record apart from suggesting that the district court’s count (four wins out of thirteen petitions) was closer to the mark. The parties’ divergent counts flow from disagreements about whether to treat motions filed in the course of a. single proceeding as separate petitions, and whether to rank an interlocutory procedural win. as a loss if the proceeding ultimately resulted in a decision against OneLink. Thus, for example, the district court counted OneL-ink’s request to intervene in the second franchise proceeding before the TRB along with several other motions filed in connection with that request as a single petition, see PRTC II, 196 F.Supp.3d at 324, 337, while PRTC argues that each motion filed with the TRB constitutes a separate petition. Likewise, the district court counted as a win the issuance of an order to show cause why a temporary restraining order should not issue by a federal district court in a suit that was ultimately dismissed as moot, see id. at 279-80, 325, 338, while PRTC argues that merely securing a show cause order is not a win. For our purposes, we need not resolve these disputes concerning OneLink’s win-loss record. Rather, we can assume, as PRTC argues, that OneLink’s various filings can be viewed as twenty-four separate petitions, and that none resulted in a meaningful victory. We must also assume, though, that all twenty-four filings were “objectively reasonable” in the sense that a “reasonable litigant could realistically expect success on the merits.” Prof'l Real Estate Inv’rs, Inc. v. Columbia Pictures Indus., Inc. (PREI), 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). We make this latter assumption because the district court so found after examining each of OneLink’s various filings, see PRTC II, 196 F.Supp.3d at 325-35, and PRTC has waived any challenge to those findings. PRTC did not make any such challenge in its main brief on appeal. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) (“[W]e do not consider arguments for reversing a decision of a district court when the argument is not raised in a party’s opening brief.”); see also Nat’l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999) (“We have repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived.”). It also failed to make any case for excusing the waiver in its reply brief[1] or at oral argument. Indeed, the entire oral argument proceeded on the assumption that the district court’s findings that all the petitions were objectively reasonable would stand. Although we can excuse waiver of this sort in certain cases, this is not such a case. Assessing the merits of OneL-ink’s petitions requires detailed analyses of a large number of different filings. We decline to undertake those analyses without briefing.[2] B. PRTC’s waiver of any argument that some of OneLink’s numerous filings were baseless creates an immediate obstacle to PRTC’s ability to maintain this lawsuit. The general rule is that a defendant cannot be held liable under the Sherman Act for ¡petitioning the government, including by filing a lawsuit. See Cal. Motor Transp., 404 U.S. at 510-13, 92 S.Ct. 609. PRTC relies on an important exception to that rule, known as the “sham” exception. See id. (citing, inter alia, Noerr, 365 U.S. at 144, 81 S.Ct. 523). In PREI, however, the Supreme Court held that a lawsuit, even when employed as an anticompetitive weapon, could only fall within the sham exception if the suit was “objectively baseless in the sense that.no reasonable litigant could realistically expect- success on the merits.” 508 U.S. at 60-61, 113 S.Ct. 1920. We assume, as do the parties, that PREI also applies to a petition filed before an administrative agency or another executive official. See 508 U.S. at 59-60, 113 S.Ct. 1920 (“We dispelled [in Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) ] the notion that an antitrust plaintiff could prove a sham merely by showing that its competitor’s purposes were to delay [the plaintiffs] entry into the market and even to deny it a meaningful access to the appropriate ... administrative and legislative fora.”)(internal quotation marks omitted, brackets and ellipsis in original). Given PRTC’s failure to argue that any one of OneLink’s petitions was objectively baseless, it is clear that no single petition could support the imposition of antitrust liability on OneLink. Accordingly, PRTC must ’predicate"‘its appeal on the contention that the serial nature of OneLink’s petitioning materially distinguishes this case from PREI; that is to say, a jury could find OneLink liable for launching a fusillade of ultimately unsuccessful petitions even if no one petition was sufficiently baseless to fit within the “sham” exception under PREI. We therefore- turn next to that contention. C. In pursuit of its effort to distinguish PREI, PRTC tries to find company in the decisions of several other circuits that have construed California Motor Transport and PREI as compatibly establishing different tests depending on whether more than one petition is challenged as . abusive. In brief, this argument first restricts PREI’s “objectively baseless” requirement to cases involving a single petition rather than a series of petitions. To assess a series of petitions, the argument relies instead on language in California Motor Transport describing as outside the scope of Noerr-Pennington immunity the “institut[ion of] proceedings and actions ... with or without probable cause, and regardless of the merits of the cases,” 404 U.S. at 512, 92 S.Ct. 609. As construed by PRTC, this argument also reads “with or without probable cause” and “regardless of the merits,” id., as including both petitions brought “with ... probable caqse” and with “merit[ ]” where the defendant’s decision to file the series of petitions paid no heed to whether they had merit. So framed, the argument views PREI very much through the lens of Justice Stevens’s concurrence. See PREI, 508 U.S. at 73, 113 S.Ct. 1920 (Stevens, J., concurring in the judgment) (“Repetitive filings, some of which are successful and some unsuccessful, may support an inference that the process is being misused. In such a case, a rule that a single meritorious action can never constitute a sham cannot be disposi-tive.” (citing Cal. Motor Transp., 404 U.S. 508, 92 S.Ct. 609)). The circuit court opinions to which PRTC points—that is to say opinions of the four circuits to have addressed similar arguments directly—all in one way or another adopt some variant of this view of the respective applicability of PREI and California Motor Transport. See Hanover 3201 Realty LLC v. Vill. Supermarkets, Inc., 806 F.3d 162, 179-81 (3d Cir. 2015), cert. denied, — U.S. -, 136 S.Ct. 2451, 195 L.Ed.2d 264 (2016); Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 363-64 (4th Cir. 2013) (doing so in the context of the Noerr-Pennington doctrine as applied to an unfair labor practices claim); Primetime 24 Joint Venture v. Nat’l Broad. Co., 219 F.3d 92, 100-01 (2d Cir. 2000); USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO (USS-POSCO), 31 F.3d 800, 810 (9th Cir. 1994) (concluding that PREI and California Motor Transport “appl[y] to different situations”). We find ourselves quite skeptical of the notion that a defendant’s willingness to file frivolous cases may render it liable for filing a series of only objectively reasonable cases. Although presented with a record involving the filing of only one lawsuit, ■the court in PREI wrote nothing to suggest that its ruling'would have been different had the defendant filed a series of objectively reasonable suits.- Rather, the Court addressed the more categorical question “whether- litigation may be a sham merely because a subjective expectation of success does not motivate the litigant,” and ruled that “an objectively reasonable effort to litigate cannot be a sham regardless of subjective intent.” 508 U.S. at 57, 113 S.Ct. 1920. Similarly, in describing California Motor Transport, PREI trained its attention not on the difference between a single suit and a series of suits, but rather on the difference between “objectively reasonable claims” and “a pattern of baseless, repetitive claims.” Id. at 58, 113 S.Ct. 1920.[3] Nor is there any pragmatic reason to presume that PREI's protections for nonfrivolous petitioning activity disappear merely because the defendant exercises its right to engage in such activity on multiple occasions. One large lawsuit or intervention in an agency proceeding can impose much more of a burden on a competitor than might a series of smaller claims. Also, where a party files a large number of petitions-here twenty-four according to PRTC—and every single one is objectively reasonable, we struggle to see how a jury could reasonably conclude that the party was filing petitions “regardless of the merits of the cases.” Cal. Motor Transp., 404 U.S. at 512, 92 S.Ct. 609. To the contrary, the larger the sample size provided by the accumulating petitions, none of which are objectively baseless, the more likely it is that the serial litigant must have exercised a fair amount of discretion in eschewing frivolous claims. Cf. USS-POSCO, 31 F.3d at 811 (“The fact that more than half of all the actions as to which we know the results turn out to have merit cannot be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success.”). And while some circuits treat less skeptically than do we the notion that PREI does not apply fully to the filing of a series of suits, none of those circuits have ever sustained a finding of liability while simultaneously determining that no frivolous petitions were filed. Of course the absence of any outright victory in so many forays similarly makes it quite clear that the likelihood of prevailing was not paramount in OneLink’s calculus when deciding whether to petition. But the task here is to identify sham litigation, not probable winners. And while we can see the logic inherent in reasoning that a nonfrivolous suit might be viewed differently when flown in a flock of frivolous suits, we see little logic in concluding that an exercise of the right to file an objectively reasonable petition loses its protection merely because it is accompanied by other exercises of that right. This is not a case in which it could reasonably be said that the petitioning activity provided no reasonable prospect of a benefit to OneLink apart from inflicting costs on PRTC. See PREI, 508 U.S. at 68-69, 113 S.Ct. 1920 (Stevens, J., concurring in the judgment) (“The label ‘sham’ .... might also apply to a plaintiff who had some reason to expect success on the merits but because of its tremendous cost would not bother to achieve that result without the benefit of collateral injuries imposed on its competitor by the legal process alone.”). Rather, had OneLink received the relief for which it petitioned, it would have received the benefits of lawfully delaying or restricting the entry of a competitor into its market. Nor is this a case in which a monopolist deterred competition by threatening to file suits without regard to their merit, as in California Motor Transport. We therefore need not decide how we would rule in either of those sorts of cases. II. For the foregoing reasons, we affirm the district court’s orders granting summary judgment in favor of OneLink.[4] . Although the reply brief contains arguments in two footnotes that some of the petitions were not objectively reasonable, it does not make any effort to explain why this court should excuse PRTC’s failure to make these arguments in its opening brief. . As indicated above, PRTC does argue that the district court erred in finding that OneL-ink actually prevailed on four petitions. PRTC also claims that the district court neglected to assess one petition filed by a third party because it erroneously deemed the petition not to have been funded by PRTC. PRTC does not, however, argue in its main brief that any of those five petitions were actually baseless 'in the sense of lacking "any reasonably realistic prospeCt of success. . California Motor Transport does at the same time remain independently relevant to misconduct, such as fraud, bribery or threats, in connection with the filing of claims, baseless or not. 404 U.S. at 512-13, 92 S.Ct. 609. See also id. at 518, 92 S.Ct. 609 (Stewart, J., concurring) (chronicling threats). . PRTC does not dispute that Noerr-Penning-ton immunity applies to the claim under the Puerto Rico Anti-Monopoly Act. It has also not argued that the district court should have remanded the Puerto Rico claims instead of granting summary judgment on those claims along with the federal claims. We also need not consider PRTC’s argument that the district court erred in its finding on causation in the first summary judgment decision. Our holding accepts that Noerr-Pennington immunity applied to each petition because of its objective reasonableness, not because of its causal role.