**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**May 2, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JOSE MANUEL HERRERA-
ARELLANO,

     Petitioner,

v.

PAMELA BONDI, United States
Attorney General,*

     Respondent.

No. 24-9539
(Petition for Review)

_____

## ORDER AND JUDGMENT**
_____

Before **MORITZ**, **EID**, and **FEDERICO**, Circuit Judges.
_____

The Board of Immigration Appeals (BIA) denied Jose Manuel

Herrera-Arellano's application for cancellation of removal under 8 U.S.C.

---

\* On February 5, 2025, Pamela J. Bondi became Attorney General of
the United States. Consequently, her name has been substituted as
Respondent, per Fed. R. App. P. 43(c)(2).

\*\* After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist in
the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument.
This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

§ 1229b(b), and he petitions for our review under 8 U.S.C. § 1252. We deny his petition.

## I. Background

Mr. Herrera-Arellano, a native and citizen of Mexico, entered the United States as a nonimmigrant visitor in 2001. He overstayed his authorization and remained in the United States, where he and his wife live with their three minor sons, who are U.S. citizens. In 2013, the Department of Homeland Security (DHS) charged him as being removable from the United States. He conceded he is removable but applied for cancellation of removal, alleging his removal would cause "exceptional and extremely unusual hardship" for his sons under § 1229b(b)(1)(D).

In July 2019, an Immigration Judge (IJ) held a hearing on his application. Mr. Herrera-Arellano and his wife, Maria, both testified, along with Maria's therapist and a clinical psychologist who had interviewed both her and their eldest son. The IJ issued a written decision finding Mr. Herrera-Arellano ineligible for cancellation of removal, while granting his request for voluntary departure.

### A. IJ's Factual Findings and Denial of Relief

The IJ found Mr. Herrera-Arellano's three U.S.-citizen sons are qualifying relatives under § 1229b(b)(1)(D). At the time of the hearing, the eldest was ten years old and the younger two were three and one.

The IJ found that both the older and middle son had "medical conditions that impact their lives." R. at 67. The eldest had been "diagnosed with Adjustment Disorder, with a mixed disturbance of emotions and conduct." *Id.* (internal quotation marks omitted). This manifested in "mood changes and anxiety attacks that cause him to bite his lips and misbehave." *Id.* He was seeing a therapist once or twice a week. He also had a history of asthma, which was "largely controlled." *Id.*

The middle son also "require[d] care to accommodate psychological and behavioral challenges." *Id.* According to his school records from the time, he "ha[d] 'very limited verbal expression' and 'limited word form and structure' that prevent[ed] him from 'combining words consistently in complete phrases,'" and had "'atypical voice quality.'" *Id.* His school characterized his symptoms as "a 'mild pragmatic language delay; a moderate receptive and expressive language delay; and a severe speech articulation and intelligibility delay,'" and had placed him on an Individual Education Plan and selected him for special education services. *Id.*

The IJ also found Maria had medical impairments resulting from being sexually abused[1] by her cousins in the couple's hometown of Rancho Grande, Zacatecas (Mexico). *Id.* The IJ found the resulting trauma

> caused Maria to develop depression, anxiety, abrupt changes in mood, and anxiety attacks that paralyze her body and prevent her from moving. She also struggles to trust strangers or build social relationships with people outside her family, preventing her from maintaining stable employment and increasing the difficulties of raising her children. Maria has intermittently attended independent and family-based counseling to help her address her traumatic past.

*Id.* The IJ recognized that although she is not a qualifying relative herself, hardship to her is "relevant insofar as it affects" the couple's sons. *Id.* at 68.

Considering these circumstances, the IJ found Mr. Herrera-Arellano's "removal will undoubtedly present a hardship, perhaps even an[] extreme hardship," to his sons. *Id.* The IJ described Rancho Grande as "a poor town with limited infrastructure," noting Mr. Herrera-Arellano had testified that "his employment opportunities in Rancho Grande will be limited to agricultural work that does not pay well." *Id.* The IJ also recognized that because the cousins who abused Maria still live in Rancho Grande, returning there might "re-traumatize her and make it difficult to care for

---

[1] The IJ characterized Maria both as having been "sexually harassed," and as having suffered an "attack," R. at 67, while her counselor and the expert psychologist testified that she had suffered "childhood sexual abuse," *id.* at 133, 140.

4

her children." *Id.* And the IJ found Rancho Grande has "nearly no access to medical treatment" for the sons and "no specialized education programs" like those Mr. Herrera-Arellano's middle son relied on in the United States. *Id.*

The IJ explained that the BIA has concluded the "exceptional and extremely unusual hardship" standard is met only when removal will result in hardship "substantially beyond what would ordinarily be expected" when a family member is removed from the country, and that it applies only in "'truly exceptional' cases." *Id.* at 67 (quoting *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (B.I.A. 2001)).

The IJ concluded Mr. Herrera-Arellano had not met this standard. He found Mr. Herrera-Arellano and his wife had "failed to establish that they are unable to relocate elsewhere in Mexico, where they may be able to obtain access to medical facilities and educational institutions that would limit the hardship," and that "[t]here is simply insufficient evidence . . . to conclude that similar services are not available to this family in more cosmopolitan parts of Mexico." *Id.* at 68. The IJ reasoned that moving somewhere other than Rancho Grande would likely reduce the hardship to Maria by distancing her from her cousins, and that because she had "managed to provide for her children" while not in therapy from 2017 to 2019, a "break from her treatment as the family resettles in Mexico will be manageable."

5

*Id.* In addition, the IJ found that because the boys' "primary language" is Spanish, they were unlikely to experience "exceptional difficulties" entering school in Mexico. *Id.* Finally, the IJ observed that even though Mr. Herrera-Arellano might earn less income in Mexico than in the United States, "economic detriment alone is insufficient" to meet the hardship standard. *Id.* (internal quotation marks omitted).

Although the IJ found Mr. Herrera-Arellano credible and stated he was "sympathetic," he concluded that he was ineligible for cancellation of removal because the hardship his removal would cause for his children "does not reach 'substantially beyond' the consequences one ordinarily encounters as a result of the removal of a family member." *Id.* (quoting *Monreal*, 23 I. & N. Dec. at 59).

## B. BIA Decision

The BIA upheld the IJ's ruling in a single-judge order. It agreed that Mr. Herrera-Arellano's "case is sympathetic," and that his removal will cause his children hardship, "which could rise to the level of extreme hardship." R. at 4. But, like the IJ, it concluded he had not shown hardship that would be "'substantially beyond'" what would ordinarily result from a close family member's removal. *Id.*

The BIA upheld the IJ's conclusion that Mr. Herrera-Arellano had not shown he would be "unable to live outside of Rancho Grande," and agreed

6

there "was insufficient evidence to show that the children could not receive educational and medical services in more cosmopolitan areas of Mexico." *Id.* It also noted and upheld the finding that Maria "was able to take breaks from treatment in the past," *id.*, and "that the children speak both Spanish and English," *id.* at 5. In sum, the BIA concluded Mr. Herrera-Arellano had "not pointed to record evidence establishing that the [IJ] clearly erred in his interpretation of the evidence," *id.* at 4, and "did not meet his burden of proof to show that, in the aggregate, any of his children will be subject to hardships which amount to exceptional and extremely unusual," *id.* at 5.

## II. Discussion

### A. Scope and Standard of Review

Because a single BIA judge upheld the IJ's ruling in a brief order, "we confine our review to the BIA's decision and will not address the IJ's decision except where the BIA has explicitly incorporated his reasoning." *Miguel-Peña v. Garland*, 94 F.4th 1145, 1153 (10th Cir.) (internal quotation marks and ellipsis omitted), *cert. denied*, 145 S. Ct. 545 (2024). However, "we are not precluded from consulting the IJ's more complete explanation of [the] same grounds" on which the BIA based its decision. *Aguayo v. Garland*, 78 F.4th 1210, 1216 (10th Cir. 2023) (internal quotation marks omitted).

Our jurisdiction to review the BIA's decision is limited by § 1252(a)(2)(B)(i), under which we may not review "any judgment regarding the granting of relief under section . . . 1229b," which governs cancellation of removal. However, an exception authorizes us to review "constitutional claims or questions of law." § 1252(a)(2)(D). Such reviewable "questions of law" include the application of a statutory standard to an established set of facts, which is a "mixed question of law and fact." *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024).[2]

As specifically relevant here, "the application of the [§ 1229b(b)(1)(D)] exceptional and extremely unusual hardship standard to a given set of facts is reviewable as a question of law under § 1252(a)(2)(D)." *Id.* at 217. Because the BIA's hardship determination is "primarily factual, [our] review is deferential." *Martinez v. Garland*, 98 F.4th 1018, 1021 (10th Cir.

---

[2] *Wilkinson* abrogated our decision in *Galeano-Romero v. Barr*, 968 F.3d 1176 (10th Cir. 2020), which had held that § 1252(a)(2)(D) did not raise questions of law that were reviewable on appeal. *Martinez v. Garland*, 98 F.4th 1018, 1020-21 (10th Cir. 2024).

8

2024) (quoting *Wilkinson*, 601 U.S. at 225).[3] Moreover, while we review the BIA's application of the statutory standard to established facts, "[t]he facts underlying any determination on cancellation of removal . . . remain unreviewable." *Wilkinson*, 601 U.S. at 225. "For instance, an IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides remain unreviewable." *Id*. "Only the question whether those established facts satisfy the statutory eligibility standard is subject to judicial review." *Id*.

## B. BIA Precedents

Mr. Herrera-Arellano argues the BIA's decision was inconsistent with its own precedential decisions, which the BIA is required to follow "in all proceedings involving the same issue." 8 C.F.R. § 1003.1(g)(2). He identifies *Monreal*, along with *Matter of Andazola-Rivas*, 23 I. & N. Dec. 319 (B.I.A. 2002), and *Matter of Recinas*, 23 I. & N. 467 (B.I.A. 2002), as the BIA's "three leading cases" applying the hardship standard. Aplt. Opening Br. at

---

[3] Neither *Wilkinson* nor any subsequent controlling decision has clarified what "deferential" form of review we should apply. The parties characterize this as presenting an open question of law, and they dispute which standard of review should apply. We are bound by *Wilkinson* and *Martinez*, which require "deferential" review, rather than de novo review, as Mr. Herrera-Arellano requests. Beyond that, we conclude that this case does not require us to further specify our standard of review, because we would deny Mr. Herrera-Arellano's petition under any standard that is deferential to the BIA's determination.

He argues the BIA decision here was inconsistent with *Recinas*, the only one of those three cases in which the applicant met the hardship standard.

As the BIA has interpreted and applied § 1229b(b)(1)(D), the hardship standard "requires an IJ to evaluate a number of factors in determining whether any hardship to a U.S.-citizen or permanent-resident family member is 'substantially different from, or beyond, that which would normally be expected from the deportation' of a 'close family member.'" *Wilkinson*, 601 U.S. at 222 (brackets omitted) (quoting *Monreal*, 23 I. & N. Dec. at 65). Relevant factors include "the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives." *Recinas*, 23 I. & N. Dec. at 468. The hardship determination is "cumulative," and "requires the assessment of hardship factors in their totality." *Id.* at 472. "[A]ny hardship case ultimately succeeds or fails on its own merits and on the particular facts presented." *Id.* at 469.

Mr. Herrera-Arellano argues that the BIA's decision and analysis in *Recinas* establishes that he also meets the hardship standard. We disagree. In *Recinas*, the applicant was a single mother of six children, four of whom were U.S. citizens. Her "entire family live[d] in the United States." *Id.* Her children were "entirely dependent on" her for support and had limited Spanish skills. *Id.* at 471. The BIA found it a "close question" whether the

10

applicant met the "exceptional and extremely unusual" hardship standard. *Id.* at 470. In concluding she had, it emphasized that she was "a single parent who is solely responsible for the care of six children and who has no family to return to in Mexico," stating those were "critical factors" that distinguished her application from cases where the standard is not met, such as *Monreal* and *Andazola*. *Id.* at 471.

Those "critical factors" are not present here. Mr. Herrera-Arellano is not a single parent. He has fewer children than the applicant in *Recinas* and shares their care with their mother, who has been able to act as a caregiver, even with her own medical issues. The couple has extended family living in Mexico, including both the adults' parents, several of Mr. Herrera-Arellano's brothers, and his adult son from a previous marriage.

*Recinas* also stated that "the hardship standard is not so restrictive that only a handful of applicants, such as those who have a qualifying relative with a serious medical condition, will qualify for relief"—suggesting a qualifying relative's serious medical conditions can establish sufficient hardship. *Recinas*, 23 I. & N. Dec. at 470. And we recognize that the medical

11

and educational needs of Mr. Herrera-Arellano's sons raise concerns and challenges that were not present in *Recinas*.[4]

However, the BIA's decision here was largely based on its conclusion that Mr. Herrera-Arellano had not shown his children will necessarily lack access to medical and educational services if the family moves somewhere in Mexico other than Rancho Grande. Given that reasoning, we are not persuaded the BIA's decision was inconsistent with the general statement in *Recinas* about the importance of a qualifying relative's serious medical condition. More broadly, because the hardship inquiry is fact-specific, we cannot say *Recinas* compelled the BIA to conclude that Mr. Herrera-Arellano met the hardship standard, where his family circumstances are unlike those the BIA identified as critical in *Recinas*. *See Recinas*, 23 I. & N.

---

[4] The BIA's decision cited *Matter of J-J-G-*, 27 I. & N. Dec. 808, 811 (B.I.A. 2020), which held that to establish exceptional and extremely unusual hardship based on the health of a qualifying relative, an applicant for cancellation "needs to establish [1] that the relative has a serious medical condition and . . . [2] that adequate medical care for the claimed condition is not reasonably available in [the] country [of removal]." *Id.* at 811. Mr. Herrera-Arellano points out that the IJ did not make explicit findings as to whether his sons' conditions were "serious." Aplt. Opening Br. at 31 n.7. But *J-J-G-* was decided after the IJ entered his decision. Mr. Herrera-Arellano has not argued *J-J-G-* reflects error in the BIA's decision.

Dec. at 469 (each hardship determination "succeeds or fails on its own merits and on the particular facts presented").[5]

## C. Relocation

Central to the BIA's decision was its determination that Mr. Herrera-Arellano had not shown he would be unable to move with his family to a "more cosmopolitan" location in Mexico where better medical and educational services might be available. R. at 4. Mr. Herrera-Arellano attacks this conclusion as unsupported and speculative.[6] To the extent he contests any factual findings related to his ability to move, or the

---

[5] Mr. Herrera-Arellano also argues "uncertainty" about his sons' Spanish proficiency makes his case analogous to *Recinas*. Aplt. Opening Br. at 38. But the BIA upheld the IJ's finding that "the children speak both Spanish and English." R. at 5. We lack jurisdiction to review that finding. *See Wilkinson*, 601 U.S. at 225.

[6] Mr. Herrera-Arellano notes that regulations require the BIA to consider whether an asylum applicant can avoid persecution by relocating within his country but argues such relocation "is not a statutory factor" for cancellation of removal. Aplt. Opening Br. at 43. To the extent he claims the agency erred by considering his ability to move somewhere other than Rancho Grande, we are unpersuaded. Although no statute or regulation required this analysis, as in asylum cases, he has not cited authority that *prohibited* it. Absent such authority, we see no reversible error in the BIA's consideration of whether he might reduce the hardship for his sons by moving somewhere other than his hometown. *Cf. Gitau v. Sessions*, 878 F.3d 429, 435 (1st Cir. 2017) (concluding petitioner had not shown she would experience "extreme hardship" under 8 U.S.C. § 1186a(c)(4)(A) because even though "it would be impossible for her to find work in her parents' village," "there was no evidence that [she] would not be able to find employment somewhere in Kenya").

availability of medical or educational services, we lack jurisdiction to review them. *See Wilkinson*, 601 U.S. at 222. To the extent he challenges the agency's application of the hardship standard, we are again unpersuaded.

Mr. Herrera-Arellano's hardship claim is primarily based on the medical and educational needs of two of his children. The BIA found the record evidence insufficient to show either that the medical and educational services to meet those needs are unavailable in Mexico or that Mr. Herrera-Arellano and his family would be unable to move somewhere other than Rancho Grande. In short, it concluded he had not carried his burden.

Our review must give deference to that decision, and we see no reason to set it aside. The BIA correctly emphasized that Mr. Herrera-Arellano had the burden to show his eligibility for cancellation of removal. *See Wilkinson*, 601 U.S. at 212 ("A noncitizen bears the burden of proving that he . . . 'satisfies the eligibility requirements' . . . ." (quoting 8 U.S.C. § 1229a(c)(4)(A))). It stated he was therefore "responsible for any evidentiary gaps." R. at 5.

The record contained the hearing testimony, plus a few documents from schools, teachers, and medical providers, and documents related to the family's finances. Mr. Herrera-Arellano has not cited to record evidence showing medical and educational services for his sons were generally unavailable in Mexico.

14

As he did before the BIA, Mr. Herrera-Arellano relies on his own testimony, emphasizing that the IJ found him credible. In discussing his wife's need for mental health care, he testified that "only rich people" can obtain mental health treatment in Mexico, R. at 101; and, related to where he would live if removed, he testified that he would return to Rancho Grande, "[b]ecause that's where my dad is, my family. They're the only ones that could give me a roof and a place to live in," *id.* at 94.

The BIA found Mr. Herrera-Arellano's testimony alone insufficient to carry his burden or show error in the IJ's fact-finding. *See Garland v. Ming Dai*, 593 U.S. 357, 371 (2021) ("[E]ven if the BIA treats an alien's evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof."). The BIA noted he (1) "ha[d] not discussed whether he has assets to assist in his move," (2) had not "established that he cannot receive some type of employment regardless of where he lives," and (3) had not cited any documentary evidence supporting his own testimony about the unavailability of mental health services in Mexico. *Id.* at 4.

Mr. Herrera-Arellano argues the first statement amounts to improper fact-finding by the BIA because "the [IJ] never discussed Mr. Herrera-Arellano's assets." Aplt. Opening Br. at 45. We disagree. We see the BIA's statement not as fact-finding but simply as stating Mr. Herrera-Arellano

15

had not developed an evidence-based argument showing he is unable to move somewhere else. We see no error in that statement. Before the BIA, Mr. Herrera-Arellano argued it had been "unreasonable [for the IJ] to assume" he had "a financial and emotional ability to move somewhere else in Mexico," but he did not cite any record evidence to show he was unable to do so. R. at 30.[7]

Likewise, the BIA's second statement (that Mr. Herrera-Arellano had not shown he would be unable to find employment) and the third statement (regarding the lack of documentary evidence as to the availability of mental health services in Mexico), only explain the BIA's conclusion that Mr. Herrera-Arellano had not carried his burden. Giving deferential review to that conclusion, we see no basis to reverse it. We have no jurisdiction to

---

[7] To the extent Mr. Herrera-Arellano now argues that documentary evidence of his financial assets shows he met the hardship standard, we decline to consider that argument or the cited evidence because he did not raise them before the BIA. *See Miguel-Peña*, 94 F.4th at 1155 ("We enforce the exhaustion requirement [of 8 U.S.C. § 1252(d)(1)] by declining to consider the unexhausted issue.").

review the BIA's fact-finding, and Mr. Herrera-Arellano has not shown the BIA erred in concluding he had not met his burden of proof.[8]

## D.  Economic Hardship

Mr. Herrera-Arellano also argues that the IJ's statement that "economic detriment alone is insufficient to support . . . a finding of extreme hardship," shows the BIA erred by considering economic hardship in isolation, rather than in combination with other factors. R. at 68 (quoting *Andazola*, 23 I. & N. Dec. at 323); *see also Monreal*, 23 I. & N. Dec. at 64 (stating that "all hardship factors should be considered in the aggregate"). But we review the BIA's decision, not the IJ's. *See Miguel-Peña*, 94 F.4th at 1153. The BIA concluded the IJ had appropriately "considered the hardship factors in the aggregate." R. at 3. And its own decision discussed the medical and educational hardships for Mr. Herrera-Arellano's sons as well as the economic impacts of the family's relocation to Mexico. We see no reversible error in its consideration of the factors relevant to its § 1229b(b)(1)(D) hardship determination.

---

[8] In a footnote in Mr. Herrera-Arellano's brief, he objects that the IJ only raised the question of potentially moving somewhere other than Rancho Grande near the end of the hearing, giving him insufficient opportunity to respond. *See* Aplt. Opening Br. at 42 n.9. To the extent he suggests this was procedural error, his argument is undeveloped. It is also unexhausted because he did not raise this issue before the BIA. We therefore do not address it. *See Miguel-Peña*, 94 F.4th at 1155.

### III.  Conclusion

We are sympathetic to the potential hardships that removal may cause to Mr. Herrera-Arellano and his family. However, we discern no legal error in the BIA's decision that requires reversal. His petition for review is DENIED.

Entered for the Court


Richard E.N. Federico
Circuit Judge